UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARI L. OLIVER, M.A.O., and M.L.O., | ) | Case No. 2:24-cv-12962 |
| | ) | |
| *Plaintiffs*, | ) | Hon. GERSHWIN A. DRAIN |
| | ) | Mag. ELIZABETH A. STAFFORD |
| v. | ) | |
| | ) | |
| OAKLAND COUNTY FRIEND OF THE COURT, | ) | |
| JULIE A. MCDONALD, KATHERINE K. | ) | |
| HERITAGE, SUZANNE K. HOLLYER, | ) | |
| STEPHANIE PYRROS-HENSEN, | ) | |
| ELIZABETH L. GLEICHER, JANE E. MARKEY, | ) | |
| DOUGLAS B. SHAPIRO, SIMA G. PATEL, | ) | |
| PETER K. DEVER, JEFFERY S. MATIS, | ) | |
| MATTHEW W. OLIVER, PHILIP G. VERA, | ) | |
| SUSAN E. COHEN, JEREMY D. BOWIE, | ) | |
| MICHAEL D. WARREN JR., | ) | |
| SARAH K. BRENNER, MARK B. BERKE, | ) | |
| EMANUEL AWUTA-COKER, | ) | |
| LIESA STOCKDALE, RYAN E. CHRISTIANSEN, | ) | |
| MATTHEW L. BELL, | ) | |
| | ) | |
| *Defendants*. | ) | |

## **PLAINTIFFS' MOTION TO STRIKE:** [ECF No. 78] **DEFENDANT MICHIGAN SPECIAL ASSISTANT ATTORNEY GENERAL MARK B. BERKE'S MOTION TO DISMISS**

Shari L. Oliver, *Plaintiff*
189 N. Castle Dr. (2675 W.)
Cedar City, UT  84720
(248) 321-6175
jebezob@hotmail.com

NOW COME Plaintiffs, SHARI L. OLIVER, M.A.O., and M.L.O. pursuant to Fed. R. Civ. P. 12(f) and the Court's inherent power to manage their dockets and strike improper filings (see also *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), Fed. R. Civ. P. 11), with a motion to strike ECF No. 78.  Motion to dismiss [ECF No. 78] is made by counsel for a public servant employed by the State of Michigan, Special Assistant Attorney General (SAAG) MARK B. BERKE ("Berke"). Defendant Berke is sued in his individual capacity only.  Counsel, who are Assistant Attorney Generals for the Civil Rights Division of the State of Michigan request dismissal of this case pursuant to Fed. R. Civ. P. 12(b)(1) lack of subject-matter jurisdiction, and (6) failure to state a claim upon which relief can be granted.

In support of this motion to strike, Plaintiffs state:

1.     Fed. R. Civ. P. 12(f) states the court may strike an insufficient defense or scandalous matter.

2.     Fed. R. Civ. P. 11(b) deters frivolous filings:

Fed. R. Civ. P. 11. Signing Pleadings, Motions, and Other Papers;
Representations to the Court; Sanctions
(b) Representations to the Court. By presenting to the court a pleading,
written motion, or other paper—whether by signing, filing, submitting, or
later advocating it—an attorney or unrepresented party certifies that to the
best of the person's knowledge, information, and belief, formed after an
inquiry reasonable under the circumstances . . .

"[T]he central purpose of Rule 11 is to deter baseless filings in District Court, and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts. *See* Advisory Committee Note on Rule 11, 28 U.S.C.App., p. 576. Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and 'not interposed for any improper purpose.' An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

3.     If this Court were to consider Defendant Berke's motion, it would be making a decision based on attorney hearsay that includes material omissions and concealment, as well argument for the misapplication of doctrines and law.

The Supreme Court has held that "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

4.     On February 27, 2025, Defendant Berke's motion to dismiss was filed in this instant case as ECF No. 78.

5.     ECF No. 78 motion to dismiss was made by counsel employed by the Michigan Department of Attorney General and has no admissions, no denials, no testimony, no depositions, no affidavits, and did not rebut Plaintiffs' sworn statements in Complaint with jurat [ECF No. 1].

6.      Complaint poses federal question jurisdiction pursuant to 42 U.S.C. § 1983 deprivation of rights under color of law, and §§ 1985(2), (3) conspiracy to interfere with civil rights.

7.      Complaint poses federal question jurisdiction pursuant to 18 U.S.C. §§ 1964(c) Racketeer Influenced and Corrupt Organizations (RICO) and (d) RICO conspiracy.

8.      Complaint stated causes of action pursuant to 42 U.S.C. §§ 1983, 1985 that alleged constitutional violations of First, Fourth, Fifth, Sixth, Seventh, Ninth, Thirteenth, and Fourteenth Amendments and deprivation of rights and conspiracy under color of law pursuant to 18 U.S.C. §§ 242 and 241.

9.      Complaint stated causes of action pursuant to 18 U.S.C. § 1964(c) and (d), and alleged violations of 18 U.S.C. § 1962 and eight (8) predicate acts.

10.     Family court involves in a federal-state enterprise (e.g. *Blessing v. Freestone*, 520 U.S. 329 (1997)), and child support agreements are interstate commercial contracts (*U.S. v. Sage*, 92 F.3d 101 (2d Cir. 1996)).

11.     Complaint's factual allegations included many violations of federal laws, including capital offenses.

12.     Complaint's factual allegations included many violations of the laws of the State of Michigan, including felonies and misdemeanors.

4

13.     Complaint's factual allegations included violations of the laws of the State of Utah, including felonies and misdemeanors.

14.     Criminal activity is necessarily outside of the scope of one's employment.

15.     Complaint alleged facts to support the elements for sixteen (16) civil causes of action, and requested monetary relief.

16.     Complaint stated criminal complaints' factual allegations support the elements of causes of action for criminal acts.

17.     Verified criminal complaints have been provided to Departments of Attorney General, District Attorneys, Federal Bureaus of Investigation, Sheriffs, Michigan Office of Inspector General, Michigan Judicial Tenure Commission, Michigan Attorney Grievance Commission, Utah Judicial Conduct Commission, Judicial Council of the Sixth Circuit, United States Department of Justice, and United States Department of Health and Human Services Office of Inspector General.

18.     Complaint named whistleblowers who provide insight into family court tyranny such as former Friend of the Court (Title IV-D[1] agency of the State

---

[1] Title IV-D of the Social Security Act of 1975 (Child Support Enforcement Program)

of Michigan) enforcement officer, former candidate for attorney general of the State of Michigan, and former chief justice of the Michigan Supreme Court.

19.     Complaint alleged various trade and business groups estimate the U.S. divorce industry is a $50 to $175 billion dollar industry.

20.     Complaint alleged federal incentive payments from Title IV-D of the Social Security Act of 1975 (approximately $25,800,000 per year for the State of Michigan (Exhibit -2)) are a motivation for DEFENDANTS and for custom, practice and policy to deprive unalienable rights secured by constitutions and to commit criminal acts to maximize "child support" collections.

21.     Complaint alleged that in fiscal year 2023, "child support" collections for the State of Michigan were approximately $1,249,556,146 [ECF No. 1, PageID.13] (Exhibit -3).

22.     Complaint alleged that in fiscal year 2023, for every $1 that the State of Michigan spent, the federal government gave the State of Michigan approximately $4.92 [ECF No. 1, PageID.13] (Exhibit -4).

23.     The Michigan Department of Attorney General was awarded approximately $8,388,845 in federal money for three (3) years [ECF No. 1-3, PageID.330].

24.     The Michigan State Court Administrative Office (SCAO) was awarded approximately $2,667,862 in federal money for three (3) years [ECF No. 1-3, PageID.331].

25.     Defendant OAKLAND COUNTY FRIEND OF THE COURT was awarded approximately $89,971,164.79 in federal money for seven (7) years [ECF No. 1-3, PageID.329].

26.     Oakland County's prosecuting attorney was awarded approximately $15,192,683.41 in federal money for seven (7) years [ECF No. 1-3, PageID.333].

27.     Macomb County Friend of the Court was awarded approximately $56,783,282.84 in federal money for seven (7) years [ECF No. 44-11, PageID.1250].

28.     Macomb County's prosecuting attorney was awarded approximately $6,126,318.59 in federal money for seven (7) years [ECF No. 44-13, PageID.1304].

29.     Complaint alleged "the who, what, when, where, and how of the fraud" in order to support allegations of intrinsic and extrinsic fraud upon the courts involved, and Social Security fraud.

30.     Complaint alleged judgment and orders from family court Case No. 2020-880855-DM are void.

31.     Plaintiffs allege Defendant Berke's motion to dismiss is scandalous, and is a solicitation of this Court to criminally aid and abet by denying accountability for Defendant Berke's alleged criminal activity.

32.     Plaintiffs allege Defendant Berke's motion to dismiss is scandalous for arguing for a clear misapplication of the *Rooker-Feldman* doctrine.

33.     Plaintiffs allege Defendant Berke's motion to dismiss is scandalous for arguing for a clear misapplication of the "domestic-relations" exception.

34.     Plaintiffs allege Defendant Berke's motion to dismiss is scandalous for omitting material facts in their meritless argument that Complaint failed to state a claim and does not meet Fed. R. Civ. P. 8(a)(2).

35.     Plaintiffs allege Defendant Berke's motion to dismiss [ECF No. 78], made by counsel with no personal knowledge, contain false and misleading statements.[2]

---

[2] ECF No. 78, PageID.5481 stated, "In 2022, [Shari] Oliver filed a lawsuit under 42 U.S.C. § 1983" is false because the lawsuit was only filed under 18 U.S.C. § 1964 (42 U.S.C. § 1983 claims were offered as an amendment to the complaint or a companion case, and ignored by the magistrate and briefly touched upon by the judge);

ECF No. 78, PageID.5481 stated, "¶ 11. Nine months later, the Sixth Circuit affirmed the District Court's dismissal for lack of subject matter jurisdiction of Oliver's complaint and modified the judgment to be a dismissal without prejudice. *Oliver v. McDonald*, No. 23-2007, 2024 U.S. App. LEXIS 18752, at *4 (6th Cir. July 29, 2024) (Ex. 5).", which was a material omission made by counsel because

"Half the Truth is often a great Lie." – Benjamin Franklin, *Poor Richard's Almanack* (July 1758)

36.     Complaint's section NOTICE TO COUNSEL [ECF No. 1, PageID.9-10] stated some Rules of Professional Conduct and that counsel for Defendants shall not assist a criminal or fraudulent act by their client.

37.     Complaint alleged that the legislative branch made law that public servants from judicial and executive branches of government shall work together for federal incentive payments (42 U.S.C. §§ 654 and 658a).

38.     Complaint alleged that the State of Michigan's passage of the Child Custody Act of 1970 and the enactment of the No Fault Divorce Law of 1971 created the system and bias that breaks apart families.

---

the appellate judges ruled on nothing other than to change the dismissal from "with prejudice" to "without prejudice" because they *refused to take jurisdiction of the challenges* (Appellant judges denied Plaintiffs' arguments that challenges were not waived): "Because her opening brief does not address the district court's determination that it lacked subject-matter jurisdiction over the federal claims under the domestic-relations exception and the *Rooker-Feldman* doctrine or its refusal to exercise supplemental jurisdiction over her state law claims, she waived any challenge to those rulings, which are dispositive of her appeal." [ECF No. 41-6, PageID.604];

other false or misleading statements made in ECF No. 78 by counsel are too many to detail for this document.

39.     Complaint alleged that the judicial and executive branches of government are working together through the family court federal-state enterprise, which is a violation of separation of powers and has resulted in lawlessness.

40.     Complaint's allegations substantiate that the family court federal-state RICO enterprise has become **tyrannical**.

41.     Complaint sues Defendant Berke in his individual capacity only.

42.     Defendant Berke is being defended by public servant attorneys from the Civil Rights Division of the Michigan Department of Attorney General (the "State of Michigan").

43.     Counsel for Defendant Berke is also defending public servants employed by the State of Michigan who are four (4) appellate judge Defendants ELIZABETH L. GLEICHER (now retired), JANE E. MARKEY, DOUGLAS B. SHAPIRO (now retired), SIMA G. PATEL, and two (2) assistant attorney general Defendants SARAH K. BRENNER, and EMANUEL AWUTA-COKER [e.g. see also ECF No. 41].

44.     The State of Michigan is not a party to this suit.

45.     Pursuant to Local Rule 7.1, on February 13, 2025, counsel requested Plaintiffs' concurrence for a motion to dismiss Defendant Berke from the complaint.

10

46.    Plaintiffs' denied concurrence on February 13, 2025.

47.    Pursuant to Local Rule 7.1, on March 9, 2025 Plaintiff Shari L. Oliver (hereinafter "Shari") sought concurrence to strike Defendant Berke's motion to dismiss when Plaintiff Shari made an e-mail that included a request for counsel to call Plaintiff Shari if counsel wanted to discuss further.

48.    On March 10, 2025, counsel for Defendant Berke responded by e-mail that they do not concur with a motion to strike.

49.    This motion to strike is intended to prevent deception, and the Court's participation in alleged criminal behavior and violations of rights secured by constitutions because the motion to dismiss has an apparent intent to protect alleged criminal acts, deny Plaintiffs their First Amendment right to petition the government for redress, deny Plaintiffs their Seventh Amendment right to a trial by jury, and divest this Court of its nondiscretionary duty to take jurisdiction.

50.    This Court has no authority to act in violation of constitutions, or rule of law.

51.    This Court has no authority to protect alleged criminals and deny due process and remedy from harms public servants cause to We the People.

52.     For the reasons above and as set forth more fully in the accompanying brief, good cause exists to strike Defendant Berke's motion to dismiss [ECF No. 78].

WHEREFORE, Plaintiffs move this Honorable Court to **STRIKE** Defendant Berke's motion to dismiss and brief [ECF No. 78], to **COMPEL** Defendant Berke's to make an ANSWER to the complaint within fourteen (14) days, and to **ACT** pursuant to 18 U.S.C § 3332(a), 42 U.S.C. § 1987, and 18 U.S.C. § 1968 (impanelment of a grand jury), together with such other and further relief as the court may deem reasonable and just.

Respectfully submitted,

/s/ *Shari L. Oliver*
_____
Dated: March 12, 2025           SHARI L. OLIVER, Plaintiff and mother/conservator
                                189 N. Castle Dr. (2675 W.)
                                Cedar City, UT  84720
                                Telephone: (248) 321-6175
                                E-mail: jebezob@hotmail.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARI L. OLIVER, M.A.O., and M.L.O., | ) | Case No. 2:24-cv-12962 |
| | ) | |
| *Plaintiffs*, | ) | Hon. GERSHWIN A. DRAIN |
| | ) | Mag. ELIZABETH A. STAFFORD |
| v. | ) | |
| | ) | |
| OAKLAND COUNTY FRIEND OF THE COURT, | ) | |
| JULIE A. MCDONALD, KATHERINE K. | ) | |
| HERITAGE, SUZANNE K. HOLLYER, | ) | |
| STEPHANIE PYRROS-HENSEN, | ) | |
| ELIZABETH L. GLEICHER, JANE E. MARKEY, | ) | |
| DOUGLAS B. SHAPIRO, SIMA G. PATEL, | ) | |
| PETER K. DEVER, JEFFERY S. MATIS, | ) | |
| MATTHEW W. OLIVER, PHILIP G. VERA, | ) | |
| SUSAN E. COHEN, JEREMY D. BOWIE, | ) | |
| MICHAEL D. WARREN JR., | ) | |
| SARAH K. BRENNER, MARK B. BERKE, | ) | |
| EMANUEL AWUTA-COKER, | ) | |
| LIESA STOCKDALE, RYAN E. CHRISTIANSEN, | ) | |
| MATTHEW L. BELL, | ) | |
| | ) | |
| *Defendants*. | ) | |

# BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE:
## [ECF No. 78] DEFENDANT MICHIGAN SPECIAL ASSISTANT ATTORNEY GENERAL MARK B. BERKE'S MOTION TO DISMISS

Shari L. Oliver, *Plaintiff*
189 N. Castle Dr. (2675 W.)
Cedar City, UT  84720
(248) 321-6175
jebezob@hotmail.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

INDEX OF AUTHORITIES .................................................................... iii

STATEMENT OF ISSUES PRESENTED ................................................1

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ...........................3

INTRODUCTION .................................................................................5

BACKGROUND ..................................................................................7

REPRESENTATION BY MICHIGAN ASSISTANT ATTORNEY GENERALS FROM THE CIVIL RIGHTS DIVISION RESULTS IN THE STATE TRESPASSING ON THE CASE, MISUSE OF FUNDS, AND A CONFLICT OF INTEREST ..........................................................................................8

AAGs as Counsel for Defendants is a Contradiction of Statutory and Constitutional Duty ................................................................................................11

Federal Grand Jury as a Check on State Misconduct .............................................13

Plaintiffs' Standing to Demand Accountability .....................................................15

Counsel (the Department of Attorney General) Made Argument Against Impanelment of a Grand Jury .........................................................................16

AAG Counsel Made Unsubstantiated Claims of Defendant SAAG Berke's Prosecutorial Immunity ................................................................................18

AAG Counsel's Misapplication of *Rooker-Feldman* and "Domestic-Relations" Exception is Scandalous, Unethical and in Bad Faith .............................................21

CONCLUSION ...................................................................................22

VERIFICATION PURSUANT TO 28 U.S.C. § 1746(1) ......................................26

CERTIFICATE OF SERVICE ...............................................................27

# INDEX OF AUTHORITIES

**Cases**

*Ableman v. Booth*, 62 U.S. 506 (1858) ........................................................4

*Blessing v. Freestone*, 520 U.S. 329 (1997) ............................................14

*Bradley v. Fisher,* 80 U.S. 335 (1872) .......................................................4

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)....................................4, 22

*Cohen v. Virginia*, 19 U.S. 264 (1821) .......................................................4

*Gomez v. Toledo*, 446 U.S. 635 (1980) .....................................................19

*Kentucky v. Graham*, 473 U.S. 159 (1985)...............................................11

*Norton v. Shelby County*, 118 U.S. 425 (1886) ..........................................4

*Powers v. Hamilton County*, 501 F.3d 592 (6th Cir. 2007)......................13

*Rankin v. Howard,* 633 F.2d 844 (9th Cir. 1980) .......................................4

*United States v. Classic et al.*, 313 U.S. 299 (1941)...................................4

*United States v. Dionisio*, 410 U.S. 1 (1973).............................................14

*United States v. Lanier*, 520 U.S. 259 (1997)............................................15

*United States v. Murphy*, 768 F.2d 1518 (7th Cir. 1985) ...........................7

*United States v. Nixon*, 418 U.S. 683 (1974).............................................17

*United States v. Will*, 449 U.S. 200 (1980)..................................................4

**The Constitution of the United States of America**

Article IV, Section 4 ...................................................................................3

Article VI, Clause 2 ....................................................................................3

First Amendment...................................................................................2, 5

Fourth Amendment ...................................................................................5

Fifth Amendment ......................................................................................5

Sixth Amendment .....................................................................................5

Seventh Amendment .................................................................................5

Ninth Amendment .....................................................................................5

Thirteenth Amendment .............................................................................5

Fourteenth Amendment ........................................................................2, 5

**Federal Statutes**

18 U.S.C. § 1341 .....................................................................................24

18 U.S.C. § 1951 .....................................................................................14

18 U.S.C. § 1964.............................................. 1, 8, 10, 11, 12, 14, 16, 17, 21, 23, 24

18 U.S.C. § 1964(c) ..................................................................................5

18 U.S.C. § 1964(d) ..................................................................................5

18 U.S.C. § 1968.....................................................................................6, 25

18 U.S.C. § 241 .......................................................................................24

18 U.S.C. § 242 ................................................................................. 14, 24

18 U.S.C. § 3331 .......................................................................................6

18 U.S.C. § 3332(a) .................................................................................6, 25

28 U.S.C. § 1331 .......................................................................................5

28 U.S.C. § 1343(a)(1)..............................................................................5

iv

28 U.S.C. § 1343(a)(2) ........................................................................5

28 U.S.C. § 1343(a)(3) ........................................................................5

28 U.S.C. § 1355 ................................................................................5

28 U.S.C. § 1746(1) ..........................................................................26

42 U.S.C. § 1983 ................................................ 1, 5, 8, 9, 10, 12, 13, 14

42 U.S.C. § 1985(2) ...........................................................................5

42 U.S.C. § 1985(3) ...........................................................................5

42 U.S.C. § 1987 ...........................................................................6, 25

42 U.S.C. § 651 .................................................................................7

42 U.S.C. § 666 .................................................................................6

Title IV-D of the Social Security Act of 1975 (known as the Child Support
    Enforcement Program) .......................................... 1, 5, 6, 7, 12, 14, 17, 23, 24, 25

Uniform Interstate Family Support Act (UIFSA) ................................................5, 6

**Rules**

Fed. R. Civ. P. 11 ..................................................................... 19, 22

Fed. R. Civ. P. 11(b) ...........................................................................4

Fed. R. Civ. P. 12(f) .......................................................................4, 22

Fed. R. Civ. P. 8(b) ................................................................... 12, 25

Fed. R. Civ. P. 8(c) ................................................................ 12, 18, 22, 25

Fed. R. Crim. P. 6 ............................................................................13

Fed. R. Crim. P. 6(a) ..........................................................................6

MRPC 1.11 ................................................................................................16

MRPC 1.7 ..................................................................................................16


**Michigan Statutes**

MCL 14.28 ...............................................................................................11

MCL 691 ..................................................................................................10

MCL 691.1408 ................................................................................... 12, 13

MCL 750.425 ............................................................................................21

MCL 780.751 ............................................................................................15


**Other Authorities**

Model Rules of Professional Conduct ....................................................21

## STATEMENT OF ISSUES PRESENTED

1.  Is there just cause to strike motion to dismiss [ECF No. 78] made by "AAG Counsel" who are Assistant Attorney Generals from the Michigan Department of Attorney General, Civil Rights Division?

2.  Does representation by Department of Attorney General's for Defendants sued in individual capacity only in a 42 U.S.C. § 1983 (deprivation of rights under color of law) or 18 U.S.C. § 1964 (Racketeer Influenced and Corrupt Organization (RICO)) lawsuit (Defendants acted outside of scope) exceed statutory authority?

3.  The Michigan Department of Attorney General (AG) receives federal funding from Title IV-D of the Social Security Act of 1975 [ECF No. 1-3, PageID.330].  Is there a conflict of interest with the Michigan Department of Attorney General's representation of individual capacity suit against alleged violators of constitutional, federal, and state laws, for which violations of federal and state laws also violate Title IV-D contracts for federal funding?

4.  Does the Department of Attorney General's representation of individual capacity Defendants in a 42 U.S.C. § 1983 or 18 U.S.C. § 1964 lawsuit (acts outside of scope) result in a misuse of public funds?

5.  Is the Michigan Department of Attorney General's representation and argument against impanelment of a federal grand jury an interference to obstruct federal oversight of state actors?

6.  Does Michigan Department of Attorney General's representation of Defendants sued in individual capacity only suggest AG complicity with criminal activity?

7.  Who upholds rule of law when the state Department of Attorney General, the county district attorney, and the county sheriff do not investigate criminal complaints that allege crimes and RICO involving public servants of executive and judicial branches of state government, and the state Department of Attorney General argues to dismiss civil case (42 U.S.C. § 1983 and 18 U.S.C. § 1964) against the perpetrators and against the impanelment of federal grand jury?

8.  Under what authority did the 6th Circuit Court in Oakland County have to hold an arraignment when jurisdiction was challenged and the prosecution did not respond to the jurisdiction challenge?

9.  Other than to vacate, under what authority does a court have to act upon an alleged void judgment and alleged void interstate support contract?

10. What relevance does *Rooker-Feldman* doctrine and domestic relations exception have to this instant case when allegations are of deprivations of rights under color of law and conspiracy, and allegations are of federal Racketeer Influenced Corrupt Organizations, **the matter involving Defendant Special Assistant Attorney General (SAAG) MARK B. BERKE was a criminal case that was dismissed *nolle prosequi***, jurisdiction challenges were not ruled upon, and Defendant SAAG MARK B. BERKE conspired with a judge and other public servant attorneys to rob and incarcerate Plaintiff SHARI L. OLIVER under color of law?

11. Would invoking the *Rooker-Feldman* doctrine to divest this Court of jurisdiction serve to protect alleged criminals from accountability, violate First Amendment rights to petition the government for remedy, and violate Fourteenth Amendment rights to Equal Protection of the Law?

12. Would invoking the "domestic-relations" exception to divest this Court of jurisdiction serve to protect alleged criminals from accountability, violate First Amendment rights to petition the government for remedy, and violate Fourteenth Amendment rights to Equal Protection of the Law?

13. Complaint alleged constitutional violations, federal law violations, state law violations, rule violations [ECF No. 1-2, PageID.257-266], which include felonies, capital offenses, and misdemeanors (see also criminal complaints and related documents, ECF Nos. 44-16 through 44-27).  Do factual criminal allegations against public servants from judicial and executive branches of state government who are defended by the state Department of Attorney General substantiate state

government has become **"destructive"** in matters pertaining to the family court federal-state enterprise? (See Declaration of Independence; also both Michigan and Utah Departments of Attorney General are counsel for public servant judge and attorney Defendants sued in individual capacities only for alleged criminal activity)

Declaration of Independence:
"We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed, --That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Article VI, Clause 2 of the U.S. Constitution** "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

**Article IV, Section 4 of the U.S. Constitution** guarantees a republican form of government[1] against domestic violence, when a judge enforces acts

---

[1] U.S. Const. Art. IV, § 4.  The United States shall guarantee to every state in this union a republican form of government, and shall protect each of them against invasion; and on application of legislature, or of the executive (when the legislature cannot be convened) against domestic violence.

3

beyond his authority under color of law,[2] judicial immunity is lost,[3] it is nothing less than lawless violence.[4]  Likewise, legislative jurisdiction that is not authorized by the United States Constitution is inoperative as though it had never been passed[5] and judges proceeding without jurisdiction are indictable for treason.[6]  Judges are expected to know the law and to know that the U.S. Constitution is the supreme law of the land.

Fed. R. Civ. P. 11(b)
Fed. R. Civ. P. 12(f)
*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)

---

[2] COLOR OF LAW. [Black's Law 4th] – The appearance or semblance, without the substance, of legal right. "Misuse of power, possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law, is action taken "under color of" state law." *United States v. Classic et al.*, 313 U.S. 299, 326 (1941).

[3] "[W]hen a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statues expressly depriving him of jurisdiction, judicial immunity is lost.  *See Bradley v. Fisher,* 80 U.S. (13 Wall.) at 351 ("when the want of jurisdiction is known to the judge, no excuse is permissible")" *Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980), cert. denied, 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981).

[4] "No judicial process, whatever form it may assume, can have any lawful authority outside the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond those boundaries is nothing less than lawless violence." *Ableman v. Booth*, 62 U.S. 506, 524, 21 Howard 506 (1858).

[5] "An unconstitutional act is not law; it confers no right; it imposes no duties; affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*, 118 U.S. 425, 442 (1886).

[6] "We [judges] have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohen v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) and *United States v. Will*, 449 U.S. 200 (1980).

NOW COME Plaintiffs, SHARI L. OLIVER (hereinafter "Shari"), M.A.O., and M.L.O. who move to strike ECF No. 78, a motion to dismiss made by counsel (who are AAG from the Civil Rights Division of the Michigan Department of Attorney General) for Defendant MARK B. BERKE (hereinafter "Berke").

## INTRODUCTION

The Plaintiffs invoke this Court's Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and §1343(a)(1), (2), and (3).  Notably, Plaintiffs' case involves the violation of Federal laws, inter alia, deprivation of rights under color of law pursuant to 42 U.S.C. § 1983, conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985(2), (3), Racketeer Influenced and Corrupt Organizations (RICO) pursuant to 18 U.S.C. § 1964(c), and RICO conspiracy pursuant to 18 U.S.C. § 1964(d).  This action arises under violations of the First, Fourth, Fifth, Sixth, Seventh, Ninth, Thirteenth, and Fourteenth Amendments of the United States Constitution.  Pursuant to 28 U.S.C. § 1355 Federal District Court shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress—subject matter of this instant case involves Title IV-D of the Social Security Act of 1975 (Child Support Enforcement Program) and Uniform Interstate Family Support Act (UIFSA).  In 1996, Congress passed and President Bill Clinton signed the Personal

5

Responsibility and Work Opportunity Act (42 U.S.C. § 666), which required that states adopt UIFSA by January 1, 1998 or face loss of federal funding for child support enforcement.  Every U.S. State has adopted either the 1996 or a later version of UIFSA.  Allegations substantiate the weaponization of "child support" and Social Security fraud.

Verified complaint demands impanelment of a grand jury pursuant to 42 U.S.C. § 1987 and 18 U.S.C. § 1968 [ECF No. 1-3, PageID.317-319].  A judge has a clear duty to act under 18 U.S.C. § 3332(a) and authority to convene a grand jury under Federal Rule of Criminal Procedure 6(a) (for regular grand juries) or 18 U.S.C. § 3331 (for special grand juries) when faced with credible evidence of capital crimes and systemic corruption.  Factual allegations in verified Complaint [ECF No. 1] substantiate a public interest issue, systemic corruption, judicial and executive collusion with breach of fiduciary duties and rule of law, violation of inalienable rights, which result in capital offenses under color of law of kidnapping and death.  Furthermore, whistleblower statements against Michigan's Title IV-D agency, Friend of the Court, suggest systemic harm began prior to 1998 (e.g. *Friend of the Court, Enemy of the Family* by Carol Rhodes [ECF No. 44-28]), and corruption at the highest level of the judiciary is described in the book *Judicial Deceit: Tyranny & Unnecessary Secrecy at the Michigan Supreme Court* (2016) by former chief Justice Elizabeth Ann Weaver (retired in 2010 from the Michigan

Supreme Court).  The facts of this case constitute a constitutional emergency requiring judicial intervention to protect the republic.

**Complaint alleged that the Oakland County family court federal-state enterprise is being used criminally.**  Similarly, the Seventh Circuit Court of Appeals held that the Circuit Court of Cook County is a criminal enterprise. *U.S. v. Murphy*, 768 F.2d 1518, 1531 (7th Cir. 1985).  And in February 2025, the entire Alabama police department was put on leave after a grand jury recommended its abolition; the police department "has recently operated as more of a criminal enterprise than a law enforcement agency" and is "an ongoing threat to public safety" [ECF No. 83-2].

## BACKGROUND

Under Title IV-D of the Social Security Act (42 U.S.C. § 651 et seq.), States receive federal funding to enforce child support, with incentives tied to collection performance.  Michigan's FY 2023 in "child support" collections ($1.25B) and grants (e.g. millions in grants to judicial and executive agencies: $89.97M for seven (7) years to Defendant OAKLAND COUNTY FRIEND OF THE COURT (FOC), $8.39M for three (3) years to the AG) show significant financial stakes. Michigan's executive and judicial branches, including the AG's office and the Friend of the Court, are financially incentivized under Title IV-D to maximize "child support" collections and receive substantial federal funds.

7

Plaintiffs argue this creates a profit motive that may drive intentional misconduct (*mens rea*), violating rights, and supports RICO and 42 U.S.C. § 1983 claims.  This profit motive incentivizes state actors (AAGs, judges, FOC) to maximize child support orders—potentially through unconstitutional means (e.g., denying due process, inflating obligations e.g. imputing income data)—establishing intent for 42 U.S.C. § 1983 (deliberate indifference to rights) and RICO (pattern of racketeering, e.g., fraud or extortion).  The sheer scale of funding suggests a systemic drive to prioritize revenue over fairness, implicating both executive (AG, prosecutors) and judicial (courts, FOC) branches in a coordinated scheme.  Other factors may also be involved such as business relationships (See also ECF No. 1, PageID.10-17).  Coordination between both branches of government can and does lead to the concentration of tyrannical power.

### REPRESENTATION BY MICHIGAN ASSISTANT ATTORNEY GENERALS FROM THE CIVIL RIGHTS DIVISION RESULTS IN THE STATE TRESPASSING ON THE CASE, MISUSE OF FUNDS, AND A CONFLICT OF INTEREST

The Michigan Attorney General's Civil Rights Division is tasked with protecting the civil rights of Michigan residents, often by investigating and addressing violations including racketeering and those committed by state actors.  AAG from this division are defending other state officials (appellate judges and AAGs) accused of violating civil rights, which contradicts the division's mission.

Defending alleged violators, including colleagues within the same office (e.g. Defendants Sarah K. Brenner ("Brenner") and Emanuel Awuta-Coker ("Awuta-Coker")), and judges with whom the office may regularly interact (e.g. Defendants Elizabeth L. Gleicher, Jane E. Markey, Douglas B. Shapiro, and Sima G. Patel) raises concerns about bias and undermines the division's credibility as an advocate for victims.  An AAG might feel pressured to prioritize loyalty to colleagues over the public interest, especially if internal dynamics or career considerations are at play.  **The State is protecting its own rather than holding officials accountable.**

Since this lawsuit targets AAGs and appellate judges in their individual capacities, the State itself is not a party to the suit, and the defendants are personally liable for any damages.  Complaint alleges individual-capacity claims under 42 U.S.C. § 1983 where officials acted outside the scope of lawful authority or in a way that violates "clearly established" rights.

AAGs from the AG Civil Rights Division appeared in this instant case as defense of these officials.  Representation by AAG from the Civil Rights Division appears to be aligning with alleged wrongdoers and against the public it serves. Additionally, it appears that Michigan public servant defendants are above the law in the State of Michigan.  AAG Counsel further states that **judges may engage in criminal activity** [e.g. ECF No. 41, PageID.553; No. 78, PageID.5492].

9

The Attorney General's office is a public institution, and defending state actors accused of civil rights violations—especially by its Civil Rights Division—**has the appearance of self-preservation rather than justice**.

This case and the allegations of violations of 42 U.S.C. § 1983 (civil rights under color of law) and RICO involve criminal acts (e.g., extortion, conspiracy). Deliberate crimes are *NOT* good-faith errors. Using public funds to shield potential felons exceeds discretionary authority under MCL 691. Michigan residents are doubly harmed—first by the alleged violations, then by funding the defense of their perpetrators.

Plaintiffs argue the Department of Attorney General is misusing State resources to defend individual-capacity constitutes an ultra vires act requiring judicial intervention. AAG Counsel's representation also violates separation of powers doctrine and creates an ongoing misuse of state resources. Public funds are wrongfully diverted from lawful government functions.

The Court has a duty to prevent the unconstitutional diversion of public funds toward private litigation defense, where no statutory authorization exists. If this practice is not immediately stopped, a dangerous precedent may be set where state officials and former officials can improperly access public resources for private defense, circumventing legislative authority and expanding taxpayer liability.

## AAGs as Counsel for Defendants is a Contradiction of Statutory and Constitutional Duty

Personal-capacity lawsuits are not against the state but against the official as an individual.  *Kentucky v. Graham*, 473 U.S. 159 (1985).

Michigan Constitution: Article I, § 1 states, "All political power is inherent in the people," and the government exists to protect their rights.  If state actors (AAGs and judges) conspired to violate rights, the AG's defense of them— especially by the Civil Rights Division—is a betrayal of this duty to the people of Michigan.

Pursuant to MCL 14.28, the AG's authority to defend cases where the State is "interested" does not clearly extend to individual-capacity suits, particularly because the alleged acts (e.g., RICO violations) are criminal or outside official duties.  AAG counsel oversteps its mandate by shielding personal misconduct rather than protecting the State's interest.  Defending alleged criminals undermines the AG's role as the State's chief law enforcement officer, tasked with upholding justice, not obstructing it.

Verified Complaint alleged *MANY* felonies, capital offenses, and misdemeanors and capital offenses [ECF No. 1-2, PageID.257-266] (see also criminal complaints and related documents, ECF Nos. 44-16 through 44-27).  Sworn factual allegations were made to substantiate the elements of crimes.

11

In motion to dismiss [ECF No. 78], AAG Counsel provided hearsay and *NO* facts pursuant to Fed. R. Civ. P. 8(b) or (c).  Counsel has ***NOT*** denied the factual allegations in Complaint No. 1 that support the elements of crimes.

AAG Counsel's appearance is obstructing accountability and undermining the Civil Rights Division's mission.  Ethically and practically, this is problematic unless clear safeguards (e.g. independent counsel) are in place.

MCL 691.1408 allows the state to provide legal representation and indemnification for employees sued for acts within the scope of employment.  However, MCL 691.1408 typically tied to tort claims under state law, not federal 42 U.S.C. § 1983 or RICO claims, and applies when the state deems it in the public interest.

Plaintiffs argue that Title IV-D incentives foster criminal acts (e.g., fraud, extortion).  Using state resources (including the AG's budget) to defend perpetrators exceeds MCL 691.1408's scope, which covers acts within employment duties, not intentional crimes.

This instant case's 42 U.S.C. § 1983 and RICO counts alleged officials acted beyond their lawful authority (e.g., violating constitutional rights without qualified immunity).  Complaint alleged SAAG, AAGs, and appellate judges acted outside their roles.  Utilizing counsel and public funds to defend them does not align with

statutes like MCL 691.1408, which ties representation to employment scope.  AAG or judges knowingly violated rights (e.g., fabricating evidence and denying due process), so defending them is unjustifiable.

If the Civil Rights Division's budget is allocated to protect citizens' rights (e.g., via enforcement actions), diverting those resources to defend alleged violators would exceed its intended purpose.  Public funds are meant to serve the public good. Spending taxpayer money to defend state officials accused of harming Michigan residents' civil rights could be viewed as contrary to that goal, especially because the defense shields misconduct rather than upholds lawful state action.

Federal courts have addressed similar issues.  For example, in *Powers v. Hamilton County*, 501 F.3d 592 (6th Cir. 2007), the court noted that states are not obligated to defend 42 U.S.C. § 1983 individual-capacity claims, reinforcing that it is a discretionary choice subject to scrutiny.

The AG's actions protect alleged criminals, conflict with the public interest, and obstruct accountability for executive and judicial branch misconduct conspiring against the people.

### Federal Grand Jury as a Check on State Misconduct

Grand juries are empaneled under federal law (e.g., Fed. R. Crim. P. 6) to investigate crimes within federal jurisdiction, including § 1983-related offenses

(e.g., 18 U.S.C. § 242, criminal civil rights violations) and RICO.  AAG Counsel's argument against impanelment of a grand jury is a state AG interference to obstruct federal oversight of state actors.

The AG (executive branch) defending AAGs (executive branch) and judges (judicial branch) while opposing a federal probe suggests a state-level cover-up across branches, a violation of separation of powers, and undermining the checks and balances federal intervention provides.  *United States v. Dionisio*, 410 U.S. 1 (1973), substantiates the use of grand juries' broad investigative powers, and denying this tool protects the accused at the public's expense.

Title IV-D's federal origin (Social Security Act) justifies Department of Justice intervention, as Michigan's implementation violates federal intent and Title IV-D misuse is actionable (e.g. *Blessing v. Freestone*, 520 U.S. 329 (1997)).  A federal judge has authority and duty to refer to the Department of Justice.

Plaintiff argue that RICO's criminal nature and deprivation of rights and conspiracy under color of law—allegedly involving felonies and capital offenses— demands investigation beyond civil liability.  The racketeering predicates (e.g., robbery and extortion, 18 U.S.C. § 1951) and 42 U.S.C. § 1983 violations (e.g., denial of familial rights, due process breaches) demonstrate the grand jury's

necessity beyond civil discovery.  The public has a heightened interest in dismantling corrupt networks within the executive and judicial branches.

AAG Counsel's resistance to a grand jury, while defending the accused, further substantiates Plaintiffs' arguments that AG is shielding a criminal enterprise, amplifying the conflict of interest and misuse of funds.

The U.S. Department of Justice often investigates state officials for civil rights violations (e.g., *United States v. Lanier*, 520 U.S. 259 (1997)).  Plaintiffs allege parallels.  The grand jury is a public safeguard against state collusion.  **AAG Counsel's opposition mimics local resistance to federal scrutiny, historically overruled in the public interest.**

### Plaintiffs' Standing to Demand Accountability

Under federal law and Michigan's Crime Victim's Rights Act (MCL 780.751 et seq.), victims of crimes have a right to justice.  Plaintiffs allege criminal acts underlying their civil claims, and thereby have asserted a public interest in investigation, not just damages.

The assertion of executive-judicial collusion against "the People" invokes a broader class interest.  Plaintiff argue that without a grand jury, systemic abuses remain unchecked, affecting all Michigan citizens, as well as all U.S. taxpayers who contribute to Social Security. Whistleblowers have spoken out [e.g. (~1998)

Carol Rhodes ECF No.1-1, PageID.116-119, No. 44-28; (~2006) Bill Hall ECF No. 1-2, PageID.282-283; (~2008) Nancy Schaefer ECF No. 44, PageID.884; (~2016) former Michigan Supreme Court chief justice Ann Weaver ECF No. 45, PageID.1847], and yet as this instant case substantiates, the harm continues. Federal RICO is a criminal enterprise necessitating federal investigation.  Capital offenses have occurred with victims sometimes murdering themselves because they cannot live with the violations of their unalienable rights.  Such events in violation of parental rights and involving Defendants judge JULIE A. MCDONALD and FOC director SUZANNE K. HOLLYER led to Derek Malecki's suicide after he was denied seeing his daughter (e.g. see ECF No. 1-3, PageID.363-367; Derek Malecki was Plaintiffs' neighbor and family friend).

### Counsel (the Department of Attorney General) Made Argument Against Impanelment of a Grand Jury

Counsel argued that Plaintiffs do not have authority to request impanelment of a grand jury.  The Michigan Rules of Professional Conduct (e.g., MRPC 1.11, duties of public lawyers) require impartiality and fidelity to the public. AAG counsel from the Civil Rights Division defending colleagues and opposing a grand jury appears to be prioritizing loyalty over justice, violating these duties.

MRPC 1.7 prohibits lawyers from representing clients if a concurrent conflict of interest exists unless certain conditions are met (e.g., informed consent).

16

While this applies to private lawyers, public lawyers are held to similar ethical standards under government ethics rules.  A public servant who swore an oath to the constitution, has an ethical conflict and breach with action towards protection of criminal acts by public servants who harm the People.  Furthermore, the "appearance of impropriety" doctrine appears to be violated as the AAG counsel's actions look like a cover-up.

AAG Counsel's apparent stance against impanelment of a grand jury is anti-democratic.  In the Watergate era, such as *United States v. Nixon*, 418 U.S. 683 (1974), grand juries exposed government misconduct despite resistance.  Assigning a Civil Rights Division AAG to defend alleged violators of civil rights and RICO creates a stark conflict, as the division should investigate, not shield, profit-driven rights violations.  The AG's dual role as a Title IV-D beneficiary and defendant advocate amplifies the perception of a cover-up, especially given its opposition to federal scrutiny.  The AG Civil Rights Division's defense and anti-grand jury stance actively enables corruption, not just passively defends it.  AAG Counsel's stance has the appearance of being less a matter of discretion and **more of complicity with criminal activity**.  Counsel's action deter exposure of misconduct.

Plaintiffs challenge the AAG Counsel's supposed neutrality.  The AG has a $8.39M stake (over three (3) years) and opposes a grand jury.  Plaintiffs argue for AAG Counsel's recusal and replacement with independent counsel.  Plaintiff Shari

provided several verified criminal complaints to the Michigan Department of

Attorney General.  The Michigan Department of Attorney General has a duty to

investigate crimes including racketeering.  The AG did *NOT* investigate, and it is

financially incentivized to *NOT* investigate.  The district attorney (DA) is

financially incentivized to *NOT* investigate.  The Sheriff also did not investigate.

- The same day that Plaintiff Shari's verified criminal complaints arrived the Michigan Department of Attorney General, Defendant AAG Brenner initiated a criminal case against Plaintiff Shari [ECF Nos. 45-16, 45-17] (a retaliation).

- Michigan Department of AG did not investigate verified criminal complaints dated September 14, 2022 [ECF Nos. 44-16, 44-20]

- Michigan Department of AG did not investigate criminal complaints dated September 22, 2022 [ECF Nos. 44-19, 44-21].

- Michigan Department of AG did not acknowledge criminal complaints dated January 30, 2023 [ECF No. 44-22].

- Oakland County, Michigan, District Attorney Karen McDonald did not investigate criminal complaints [ECF No. 44-27] (Karen McDonald's signature is on agreement awarding $15,192,683.41 to prosecuting attorney [ECF No. 1-3, PageID.333]).

- Oakland County, Michigan, Sheriff did not investigate criminal complaints [(Exhibit -5), ECF No. 44-25].

### AAG Counsel Made Unsubstantiated Claims of Defendant SAAG Berke's Prosecutorial Immunity

AAG Counsel argued immunity for Defendant SAAG Berke through

hearsay, which does not meet Fed. R. Civ. P. 8(c).  "Since qualified immunity is a

defense, the burden of pleading it rests with the defendant." *Gomez v. Toledo*, 446

U.S. 635, 640 (1980).  Furthermore, AAG Counsel omitted material facts.

Omission of material facts obstructs justice, which could result in Rule 11

sanctions.

   AAG Counsel's motion to dismiss omitted many relevant factual allegations:

- Case Nos. 2022-221185FY-FY and 2023-285719-FH are allegedly void due to being based on allegedly void judgment and orders made through Case No. 2020-880855-DM where perjury, subornation of perjury, fraud, libel, and violations of due process occurred, just to name a few of the crimes.

- Jurisdiction of district court Case No. 2022-221185FY-FY was challenged and never proven prior to binding over to circuit court Case No. 2023-285719-FH.

- Jurisdiction of Case No. 2023-285719-FH (6th Circuit Court in Oakland County) was challenged on August 7, 2023 [ECF No. 45-18].

- NOTICE OF HEARING for the jurisdiction challenge was filed on August 7, 2023 [ECF No. 45-21].

- NOTICE OF HEARING was made pursuant to protocol for Defendant judge MICHAEL D. WARREN JR. ("Warren") (Exhibit -6).

- Prosecution did not respond to the jurisdiction challenge prior to arraignment hearing.

- **Prosecution did *NOT* attend the arraignment in district court Case No. 2022-221185FY-FY.**

- **Defendant judge JEREMY D. BOWIE held the arraignment <u>without the prosecution</u> and despite Plaintiff Shari's special appearance to challenge the jurisdiction of the court.**

- Plaintiff Shari made a *SPECIAL* appearance to the arraignment of circuit court Case No. 2023-285719-FH via Zoom **to challenge the jurisdiction of the court** [ECF No. 1-3, PageID.353].

- Defendant SAAG Berke did not attempt to prove jurisdiction of the court.

- Jurisdiction of the court for Case No. 2023-285719-FH was *NOT* proven.

- Statement that Plaintiff Shari was not at the arraignment is categorically false:

  > "I am Shari Oliver.   And I am making a special appearance to challenge the jurisdiction of this Court.  My verified motion to dismiss was filed August 7th." (Tr. 3:16-18, August 16, 2023) [ECF No. 1-3, PageID.353].

- Defendant AAG Awuta-Coker made an affidavit that swears based on personal knowledge that Plaintiff Shari was not at the arraignment [ECF No. 1-3, PageID.360].

- Arraignment was attended by Defendant SAAG Berke in-person, Defendant AAG Brenner is the prosecutor for the case, and Defendant AAG Awuta-Coker's office is located in Lansing, Michigan approximately sixty-nine (69) miles and an hour and a half drive from the court.

Defendants SAAG Berke (P54935), judge Warren, AAG Brenner (P65430), and AAG Awuta-Coker (P81352) participated in a conspiracy to state Plaintiff Shari was not at an arraignment.  The facts show that Plaintiff Shari made a special appearance via Zoom to challenge the jurisdiction of the Court.  The Court did not readmit her to the hearing after she lost her Zoom connection.  Plaintiff Shari resides approximately 1,850 miles from the court.  Conspiracy was orchestrated to rob her of her bond of $2,607.13, and to issue an arrest warrant that led to her unlawful incarceration and extortion of Plaintiff Shari's mother.  Furthermore, the

facts substantiate that Defendants SAAG Berke, judge Warren, and AAG

Brenner's conspiracy incited AAG Awuta-Coker to make false the affidavit [ECF

No. 1-3, PageID.360].  MCL 750.425 is a crime.

> **MCL 750.425  Inciting or procuring one to commit perjury.**
> Inciting or procuring one to commit perjury—Any person who shall
> endeavor to incite or procure any person to commit the crime of perjury,
> though no perjury be committed, shall be guilty of a felony, punishable by
> imprisonment in the state prison not more than 5 years.

### AAG Counsel's Misapplication of *Rooker-Feldman* and "Domestic-Relations" Exception is Scandalous, Unethical and in Bad Faith

AAG Counsel's argument to divest this Court of jurisdiction by invoking

*Rooker-Feldman* doctrine and the "domestic-relations" exception is scandalous,

unethical and in bad faith to protect wrongdoers and obstruct justice.  Plaintiffs

allege Defendants committed eight predicate RICO acts and additionally *MANY*

other crimes pursuant to federal and state law.  Preventing Plaintiffs, who are

victims, from receiving justice is an attempt to subvert the legal process.

Under the Model Rules of Professional Conduct, attorneys are required to

act with candor toward the tribunal (Rule 3.3) and are prohibited from making

false statements of law or fact. If an attorney knowingly misapplies the law in

order to protect a criminal, this would violate these ethical obligations.

An attorney has a professional duty to uphold justice and to represent their

clients honestly and ethically.  An attempt to use the law inappropriately to protect

criminals or prevent the pursuit of justice could lead to disciplinary action and even sanctions.  Furthermore, AAG Counsel are public servants and are sworn to uphold their oath to the constitutions and have a duty to uphold rule of law.

Courts have the ability to impose sanctions if they find that a lawyer's behavior is designed to obstruct justice or is in bad faith.  Fed. R. Civ. P. 11 allows courts to impose sanctions on lawyers who submit motions or arguments that are frivolous, improper, or made in bad faith.

This court has authority to strike Defendant Berke's purported defense.

Fed. R. Civ. P. 12(f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

## CONCLUSION

Pursuant to Fed. R. Civ. P. 12(f) and the Court's inherent power to manage their dockets and strike improper filings (see also *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), Fed. R. Civ. P. 11) Plaintiffs move this Court to strike insufficient defense ECF No. 78, a motion to dismiss made by AAG Counsel that is comprised of attorney hearsay, material omissions, misapplied case law, and no defense pursuant to Fed. R. Civ. P. 8(c) for immunity claims.  Additionally, AAG Counsel representation is a conflict of interest and misuse of public funds for AAG to be representing Defendant SAAG Berke in his individual capacity for actions out of the scope of his employment.

The $1.25B in "child support" collections and the Title IV-D financial

incentives ($25.8M per year to Michigan, $8.39M for three (3) years to the AG,

$89.97M for seven (7) years to Defendant FOC, etc.) provide a powerful motive

for misconduct and criminal acts.  This additionally substantiates a conflict of

interest (AG defending a system the AG profits from), the misuse of AG funds

(shielding profit-driven crimes), and justifies a federal grand jury to probe a

potential statewide enterprise.  Plaintiffs emphasize:

- "Child support" collections and federal funding are motive as *mens rea* for systemic rights violations.

- $1.25B yearly "child support" collection may result in officials knowingly skewing rulings or enforcement for profit (e.g., inflated "child support" orders by denying custody or imputing income, denied witnesses, fabricated evidence, denied appeals).

- $89.97M (over seven (7) years) to Defendant Oakland FOC result in additional acts under color of law (e.g., fraudulent FOC reports, biased judicial rulings including utilization of perjury and slander).

- The AG's financial stake of $8.39M (over three (3) years) compromises its duty to the public.

- $15.19M (over seven (7) years) to Oakland County prosecutors suggests a broader executive branch stake, and facts substantiate both AG and DA shield a criminal enterprise.

- Executive and judiciary harmful acts result in a RICO pattern.

- The People of Michigan have a right to accountability over a $1.25B "child support collection machine" that may harm mothers, fathers, and children.

- The People of the United States have a right to accountability for the funding from Social Security.

23

- Alleged abuses driven by those funds **is a double injury—paying for their own oppression**.

The facts substantiate AG's actions as not just conflicted but complicit, making a compelling case for federal intervention.

- Profit vs. People: Contrast the $1.25B yearly in collections (and millions in grants) with the public's interest in fair justice. Title IV-D's financial incentives prioritize revenue over rights, making accountability—via a grand jury—essential.

- Systemic Impact: The involvement of FOC, courts, DA prosecutors, and the AG suggests a conspiracy affecting thousands of Michigan residents (millions according to Bill Hall [ECF No. 1-2, PageID.282]), not just Plaintiffs.

- Systemic Corruption: The yearly $1.25B in collections and multi-million-dollar grants indicate a statewide scheme, **justifying a federal grand jury to probe beyond individual acts to the Title IV-D system itself**.

- Eight (8) RICO predicates alleged (e.g., 18 U.S.C. § 1341, mail fraud) and criminal civil rights violations and conspiracy (18 U.S.C. §§ 242, 241) fall under federal law, necessitating Department of Justice involvement. The AG's opposition obstructs this, which substantiates protecting its own funding stream.  Cases like *United States v. Gillock*, 445 U.S. 360 (1980) affirm federal power to investigate state officials for corruption, supporting Plaintiffs' call for a grand jury over state resistance.

AAG Counsel argues for invoking *Rooker-Feldman* doctrine and domestic-relations exception to divest this Court of subject matter jurisdiction. Doctrines do not prevent federal courts from hearing cases on federal statutes and when constitutional rights are at stake.  Case law supersedes neither the

24

Constitution of the United States nor federal statutes.  Applying such doctrines is a clear misapplication of law.  The yearly $1.25B received from the "child support collection machine" and the multi-million-dollar federal grants substantiate AAG Counsel's intent is to protect the alleged criminal state actors.  Furthermore, AAG Counsel's defense was hearsay.  AAG Counsel provided *NO* defenses pursuant to Fed. R. Civ. P. 8(b) or (c).  However, any good-faith defenses are negated by Title IV-D incentives and other motives for *mens reas* listed in Complaint [ECF No. 1].

WHEREFORE, Plaintiffs move this Honorable Court to **STRIKE** Defendant SAAG Berke's motion to dismiss and brief [ECF No. 78], to **COMPEL** Defendant SAAG Berke's to make an ANSWER to the complaint within fourteen (14) days, and to **ACT** pursuant to 18 U.S.C. § 3332(a), 42 U.S.C. § 1987, and 18 U.S.C. § 1968 (impanelment of a grand jury), together with such other and further relief as the court may deem reasonable and just.

Respectfully submitted,

/s/ **Shari L. Oliver**
_____

Dated: March 12, 2025          SHARI L. OLIVER, Plaintiff and mother/conservator
                               189 N. Castle Dr. (2675 W.)
                               Cedar City, UT  84720
                               Telephone: (248) 321-6175
                               E-mail: jebezob@hotmail.com

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746(1)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 12, 2025.

_Shari Lynn Oliver_
Shari Lynn Oliver

STATE OF _____UTAH_____ )
COUNTY OF __IRON_____ )

SWORN TO and subscribed before me on this 12th day of March, 2025 by means of in-person notarization, and who has produced as identification: Driver license for the State of Utah.

TATE WOMACK
Notary Public · State of Utah
Comm. No. 719149
My Commission Expires on
Jul 9, 2025

_Tate Womack_
Notary Public

Commission Expires: 07/09/2025

26

## CERTIFICATE OF SERVICE

I hereby certify that, on March 12, 2025, I caused the foregoing document,

**PLAINTIFFS' MOTION TO STRIKE: [ECF No. 78] DEFENDANT**

**MICHIGAN SPECIAL ASSISTANT ATTORNEY GENERAL MARK B.**

**BERKE'S MOTION TO DISMISS** to be electronically filed with the Clerk of

the Court using the CM/ECF System, which will send notification for retrieval of

an electronic copy of this document to all parties and counsel of record.


/s/ *Shari L. Oliver*
_____
SHARI L. OLIVER, Plaintiff
189 N. Castle Dr. (2675 W.)
Cedar City, UT  84720
Telephone: (248) 321-6175
E-mail: jebezob@hotmail.com

**2:24-cv-12962-GAD-EAS Notice is electronically mailed to:**

<u>"Michigan Appellate Judge and Assistant Attorney General Defendants"</u>
Cassandra Drysdale-Crown (P64108)
Assistant Attorney General
drysdalecrownc@michigan.gov
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659

Kimberly K. Pendrick (P60348)
Assistant Attorney General
pendrickk@michigan.gov
3030 W. Grand Blvd. 10th Flr.
Detroit, MI 48202
(313) 456-0067

*Attorneys for Defendants Gleicher, Markey, Shapiro, Patel, Brenner, Berke, and Awuta-Coker*

<u>"Utah Defendants"</u>
Darin B. Goff (11355)
Assistant Attorney General
dgoff@agutah.gov

Alexander Gourde (19548)
Assistant Attorney General
agourde@agutah.gov

160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, UT 84114
(801) 366-0100

*Attorneys for Defendants Stockdale, Christiansen, and Bell*

<u>"Oakland County, Michigan Defendants"</u>
Brooke Elizabeth Tucker (P79776)
Sr. Assistant Corporation Counsel
tuckerbe@oakgov.com
(248) 858-2007

Mary Ann Jerge (P46574)
Sr. Assistant Corporation Counsel
jergem@oakgov.com
(248) 858-0551

1200 N. Telegraph Road, Bldg. 14E
Pontiac, MI 48341

*Attorneys for Defendants Oakland County Friend of the Court, McDonald, Heritage, Hollyer, Pyrros-Hensen, Dever, Matis, and Warren*

<u>"Michigan Private Attorney Defendant"</u>
Ellen Bartman Jannette (P41800)
Plunkett Cooney
ejannette@plunkettcooney.com
(248) 594-8221

38505 Woodward Ave. - Suite 100
Bloomfield Hills, MI 48304

*Attorney for Cohen*

<u>"Pontiac, Oakland County, Michigan Judge Defendant"</u>
Anne McClorey McLaughlin (P40455)
Rosati, Schultz, Joppich & Amtsbuechler, P.C.
amclaughlin@rsjalaw.com
(248) 489-4100

27555 Executive Drive, Suite 250
Farmington Hills, MI 48331

*Attorney for Bowie*

28

"<u>Michigan Private Attorney and Private</u>
<u>Citizen Defendants</u>"
Alia Sareini (P86710)
Mohamed Zaher (P52020)
Advanta Law Firm, P.L.C.
lawyer@advantalaw.com
23800 Southfield Rd., Suite 220
Southfield, MI  48075
(248) 281-6299

*Attorneys for Defendants Vera and Oliver*